OPINION
The mother of Maxwell Morris (Maxwell), Amy Morrissey kna Fannin (Amy), is appealing from a grant of permanent custody of Maxwell to the Montgomery County Department of Human Services, Division of Family and Children Services (hereinafter Children Services).
The recommendation for permanent custody was made by a magistrate of the Montgomery County Juvenile Court after two days of hearings in which Amy was represented by appointed counsel, and the alleged and totally absent father was also represented by appointed counsel. The magistrate made the following summary findings of fact, conclusions of law, and decision as follows:
 FINDINGS OF FACT
Maxwell A. Morris is a minor child born on January 17, 1991, whose social security number is 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.
Since the child was removed from the mother in September 1998, the mother has repeatedly been incarcerated, usually for months at a time.
When the mother was not in jail since the child's removal, she visited with the child only 5 times.
The mother provided no proof that she completed any objective on the case plan. The objectives involved substantial issues regarding her suitability to parent this child, including chemical dependency, domestic violence, and mental health. At the present time, she testified, she needs help with the issues involving domestic violence, drug addiction, and parenting.
The mother is presently living with a friend of her mother-in-law, and she is unemployed.
The mother did not send a card or letter to her son while she was in jail, even on special occasions like Christmas or his birthday.
The mother has no relatives who are willing and suitable to assume legal custody of this child.
The father has not been involved with this child, he provided no information to anyone about any relatives of his who might be willing and suitable to assume legal custody of this child, and he did not participate in the trial.
The child expressed through his guardian ad litem a preference to be adopted.
The GAL recommended PC be granted.
The mother's new mother-in-law, Joyce Bent, has never met this child, and although she made numerous phone calls to MCCS concerning the mother's visitation with this child, she did not pursue with the agency the possibility of being considered as a legal custodian for this child. Neither did she file a motion herein for legal custody. As a witness in this trial, she expressed belief that it would be good for her to have custody of this child so that she could make it possible for the mother to regain custody of the boy. The court finds that Ms. Bent does not have a relationship with this child, nor has she shown a commitment to his well-being.
Ms. Bent already has substantial responsibilities in the home for the care of her invalid husband, and this court just granted her ITC of a newborn child of the mother. The court finds that Ms. Bent is not a suitable person to assume legal custody of this child.
 CONCLUSIONS OF LAW A. This Court has jurisdiction and is the proper venue to determine the issues raised by the Motion at Bar Section 2151(2)(A)(1).
 B. Ohio Revised Code Section 2151.412 is controlling in the instant case. (See also O.R.C. Section 2151.414), Section 2151.412(G)(5) states the following:
 If the child cannot be placed with either of his parents within a reasonable period of time or should not be placed with either parent, if no suitable member of the child's extended family or suitable non relative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the Public Children Services Agency or private child placing Agency.
 C. The child should not be placed with either parent since neither parent affirmatively demonstrates a present capacity to provide care.
 D. The child cannot be placed with the mother within a reasonable period of time because she has demonstrated no progress on resolving the problems that originally caused the child to be removed from her care.
 E. The child cannot be placed with the father within a reasonable period of time since because he has shown no interest in the child or involvement with him.
 F. There is no suitable member of the child's extended family willing and/or able to provide adequate parental care and accept legal custody of the child.
 G. There is no suitable non-relative available to accept legal custody of the child.
H. The child is adoptable.
 I. The Agency has a reasonable expectation of placing the child for adoption.
Based upon clear and convincing evidence:
 J. The commitment of the child to the permanent custody of Montgomery County Children Services is determined to be in the best interest of the child.
 DECISION OF MAGISTRATE
Based on the foregoing findings and conclusion, it is the decision of the Magistrate that:
I. Temporary custody is hereby terminated.
 II. Permanent custody is granted to Montgomery County Children Services.
 III. The natural or adoptive parents are divested of any and all parental rights, privileges, and obligations, including all residual rights and obligations.
 IV. The Guardian ad Litem shall continue to serve until the adoption is finalized.
 V. The Dayton City School District is found to be responsible for the cost of education for the child.
 VI. An annual review hearing to assess the status of the child be scheduled for February 26, 2001 at 9:00 a.m. before the Citizen Review Board.
Amy timely filed objections to the magistrate's decision which were overruled by the Juvenile Court judge which adopted the decision of the magistrate in its entirety. Upon appeal, Amy presents the following assignments of error:
 1. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT IT HAS BEEN SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTERESTS OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO THE CLARK COUNTY DEPARTMENT OF HUMAN SERVICES.
 2. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER ALL ALTERNATIVES PROSCRIBED BY STATUTE BEFORE GRANTING PERMANENT CUSTODY OF THE CHILDREN TO THE CLARK COUNTY DEPARTMENT OF HUMAN SERVICES.
 3. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT AWARDED PERMANENT CUSTODY TO THE CLARK COUNTY DEPARTMENT OF HUMAN SERVICES WHEN THE PARENT HAD SUBSTANTIALLY COMPLIED WITH THE CASE PLAN.
 4. THE TRIAL COURT'S DECISION WAS AGAINST THE WEIGHT OF THE EVIDENCE WHEN IT DETERMINED THAT THE PARENTS DID NOT COMPLY WITH THE CASE PLAN.
 5. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT IT HAD BEEN SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN COULD NOT (SHOULD NOT) BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME.
As the State in its appellee's brief correctly notes: "Appellant's five assignments of error all deal with the issue of whether or not the State proved by clear and convincing evidence that permanent custody was the appropriate placement and in the best interest of the child. As a result, all the assignments will be responded to together." We adopt the same course of action.
As the United States Supreme Court has held: "Before a State may sever completely and irrevocably the rights of parents and their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." Santosky v. Kramer (1982),455 U.S. 745, 746, 102 S.Ct. 1388, 1391. The standard of clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts established." State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citations omitted. As we have stated many times, a trial court enjoys broad discretion in custody matters. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. A reviewing court should be guided by the presumption that the trial court's findings were correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In order for a court to grant permanent custody of a child to the State, the State must prove:
 that it is the best interest of the child to grant permanent custody of the child and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
(2) The child is abandoned and cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
In this case, the trial court adopted the findings of the magistrate and his conclusions of law quoted above that the child not be placed with either parent, and there is no suitable relative or non-relative available to accept real custody of the child.
We have read the entire transcript of both days of hearings and find that the court's judgment is supported by competent, credible evidence and will, therefore, not be reversed. C. E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. At the hearing, Maxwell's caseworker testified that she had presented a case plan to Amy and discussed it with her thoroughly, but that Amy did not complete any of the elements of the case plan, which included parenting classes, substance abuse treatment, domestic violence counseling, and a psychological assessment. She further testified that Amy attended only five out of seventy planned visits with Maxwell and, therefore, spent only ten hours with him in the preceding six months. The caseworker was asked the following question: "Do you feel that the mother has shown a commitment toward reunification with Maxwell in this case?" A. "Absolutely not." (Tr. 21 — 22). Furthermore, Amy has been incarcerated "numerous times" (Tr. 27), and the father has never expressed an interest in Maxwell (Tr. 31). Amy admitted on the witness stand that she has been arrested "quite a bit" (Tr. 65) and has "spent quite a bit of time in jail." (Tr. 66). She also admitted that she has never completed any of the programs specified in her case plan and failed to follow court orders (Tr. 72 — 76), and she hasn't "had much contact with Maxwell." (Tr. 77).
The caseworker also testified that there is an adoptive home already approved for Maxwell, and that he is extremely bonded with the prospective adoptive parents. (Tr. 84-85).
Of further interest is the report of the guardian ad litem appointed for Maxwell, who interviewed Maxwell and found that he was doing well in his foster home, the prospective adoptive home, and reported that he wants to be adopted and understands the consequences of being adopted. The guardian ad litem recommended that Children Services be granted permanent custody of Maxwell. The guardian further stated that Amy had not been able to make progress on her case plan, but instead has been incarcerated most of the time, and that she has a history of violence, either being abused or being the abuser. (Docket 50).
Based upon our review of the entire record, we find that the decision of the Juvenile Court awarding permanent custody of Maxwell to the Children Services Board is supported by clear and convincing evidence. All of Amy's assignments of error are overruled, and the judgment is affirmed.
 _____________________ YOUNG, J.
FAIN, J. and GRADY, J., concur.